285 So.2d 77

Sarah L. Rodda JACKSON

v.

J. H. RODDA, Sr.

SC 255.

Supreme Court of Alabama.

Nov. 8, 1973.

Corretti, Newsom, Rogers, May & Calton, Birmingham, for appellant.

**570**

Bishop, Carlton & Sweeney, Birmingham, for appellee.

MERRILL, Justice.

This appeal is from a decree ordering the respondent-appellant, Sarah Rodda Jackson, to reconvey to complainant-appellee, her father, J. H. Rodda, Sr., certain real property which he had previously conveyed to her by four warranty deeds all dated and executed January 13, 1966 and recorded the next day.

The bill of complaint, filed in August, 1971, charged mental incompetency to convey and undue influence, and also alleged that Rodda had demanded that his daughter reconvey the property to him but she had refused.

The court's decree stated in part:

"This real property had previously been conveyed by the father to the daughter by warranty deed. There was no monetary consideration for the execution of the deed from the father to daughter.

"The Court has heard extended oral testimony and has reviewed the exhibits in the file and has been furnished with memoranda of authorities accompanied by arguments of counsel in their respective briefs.

"From all the evidence and pleadings in this cause this Court can, under principles of equity and good conscience and upon allied authorities of the cases of Groover vs. Darden, 259 Ala. 607, 68 So.2d 28, Tipton vs. Tipton, 249 Ala. 537, 32 So.2d 32, and Jones vs. Booth [Boothe] 270 Ala. 420, 119 So.2d 203, conclude and find that, at the time of the execution of the deed by Complainant to Respondent Complainant was not mentally capable of understanding the

consequences of his actions and was not mentally competent to convey said property to Respondent and that the conveyance was executed solely as the result of the insistence of Respondent that Complainant execute the deed.

"Accordingly, it is CONSIDERED, ORDERED, ADJUDGED and DECREED by the Court as follows:

"ONE: Respondent is commanded to execute a warranty deed to Complainant which will convey the above described real property to him, free from all encumbrances.

"TWO: Respondent is not required to account to Complainant for rents and profits arising out of the use and rental of the said properties, these said emoluments being hereby awarded to her for her services to Complainant to date."

The motion for rehearing was denied.

The argued assignments of error charge that there is no evidence to support the conclusion that Rodda was mentally incompetent when the deeds were executed or that there was any undue influence on the part of the daughter.

In a similar case, Chrisman v. Brooks, 291 Ala. 237, 279 So.2d 500, this court said:

"Where evidence is heard orally before the trial court, the finding of the court has the effect of a jury's verdict and will not be disturbed on appeal, unless plainly erroneous, whether in law or equity. And we must affirm the trial court's decree, if fairly supported by credible evidence under any reasonable aspect, regardless of what might be our view of the evidence. Patterson v. Brooks, 285 Ala. 349, 232 So.2d 598. This rule has been applied in the following recent cases where the deed was set aside because of the incompetency of the grantors, or undue influence or both: (Citations omitted.)"

▆ In view of the argued assignments of error, it is only necessary that we list evidence which supports the decree of the court although there was credible evidence presented by the appellant.

Rodda, who was 68 years of age when he testified at the trial, worked for Southern Railway Company. In May, 1964, appellant's seven-year-old son accidentally shot and killed Rodda's wife. Rodda suffered a nervous breakdown and was ill for some time. The railroad would not rehire him in his former position. His daughter was looking after him, nursing him during his illness, paying his bills and advised him in his personal affairs. One of Rodda's sons testified that his father depended upon appellant for advice after his wife's death because appellant had obtained a better education than the other eleven brothers and sisters. During the period, May, 1964 and January 12, 1966, Rodda opened a joint checking account of $5,000.00 with his daughter.

Just prior to the execution of the deeds in January, 1966, there had been an explosion in a house he was renting and one or more of the tenants was injured. Appellant was called and she "insisted" that all the property he owned, including his home, be deeded to her. He testified that she said she would see that each of the children would "get an equal part." He told her where the deeds were and she took him to the home of an attorney and friend where the deeds were prepared and executed.

Three of Rodda's children, other than appellant, testified and at the request of the trial court, others who would have testified "substantially the same thing," were not called. The effect of that testimony was that on or about January 12 or 13, 1966, Rodda was emotionally unstable from the loss of his wife, sick, disturbed and would not have known or understood what he was doing in making a conveyance of all his property to appellant for no consideration.

Appellant testified that the property was conveyed to her as a gift because she had been a dutiful daughter in taking care of

him. She admitted to the trial court that her father had told her, when he executed the deeds, "that he knew that you would do the right thing by the other children." But when her father requested the property back, she refused to reconvey it. The court asked her what she thought was "the right thing to do about this property." Her reply was, "At my daddy's death, after his funeral expenses and his burial we will negotiate and we will do the right thing." Finally, she stated to the court that she would respect her father's will in handling his affairs, but she would do so at her own time and convenience.

In Groover v. Darden, 259 Ala. 607, 68 So.2d 28, the court said:

> "A conveyance of land obtained for a grossly inadequate consideration by unfair advantage taken of great mental weakness, though not amounting to absolute incapacity of the grantor, will in equity be set aside on equitable terms when application therefor is made seasonably by the grantor, his representatives or heirs. Walling v. Thomas, 133 Ala. 426, 31 So. 982. Gross inadequacy of consideration, when coupled with other facts strongly tending to show fraud or undue advantage, is a suspicious circumstance. Burke v. Taylor, 94 Ala. 530, 10 So. 129."

■ The relationship of parent and child is confidential. Jones v. Boothe, 270 Ala. 420, 119 So.2d 203; Tipton v. Tipton, 249 Ala. 537, 32 So.2d 32.

> "In transactions *inter vivos*, where the parties stand in confidential relations, and the grantee, who is the beneficiary, is the dominant spirit in the transaction, the law raises a presumption of undue influence and casts upon the opposite party the burden of repelling such presumption by satisfactory evidence whenever the transaction is assailed. * * *" Jones v. Boothe, 270 Ala. 420, 119 So.2d 203, and cases there cited.

While the trial court did not use the words "dominant spirit" in its opinion, still we think it clear that the court did consider appellant to be "the dominant spirit in the transaction" and there was evidence to support such a finding. It is evident that the trial court did not conclude that appellant had successfully met the burden of the presumption of undue influence cast upon her.

The authorities cited in this opinion support the decree of the trial court.

Affirmed.

HEFLIN, C. J., and HARWOOD, MADDOX and FAULKNER, JJ., concur.